MAXIM MOTOR COMPANY, RELATOR, v. BOROUGH OF PALISADES PARK ET AL., RESPONDENTS.

Decided February 19, 1929.

For the relator, *Wright, Vander Burgh & McCarthy,* by *LeRoy Vander Burgh.*

For the respondents, *Pitney, Hardin & Skinner,* by *E. O. Stanley, Jr.*

Before Mr. Justice PARKER, sitting alone under the statute.

The rule to show cause was not handed to me with the depositions but, as I recollect it, in a general way was aimed at requiring the borough to enter into a contract with the relators for the purchase of a fire engine for the sum of $12,500, pursuant to an alleged resolution claimed to have been passed in July, 1928, and approved by the mayor as required by the statute.

For the respondents it is urged, in the first place, that the resolution never was approved by the mayor but, on the contrary, was vetoed by him, and this is one of the issues in the

case. Then it is further urged for the relators that, even assuming that the mayor did veto the resolution, the council voted to override that veto; and the validity of such alleged action is attacked by the respondents, first, on the ground that the motion to override the veto was adjourned several times and finally dropped out of sight so that it died a natural death; and, secondly, on the ground that even if continued by proper adjournments, the vote to override the veto was a vote of three to two in the council, and that the situation required a vote of a majority of the whole council, namely, four votes, which were never cast. While this is not dispositive of the case, I may say at this time that I consider the case of *Lombardo* v. *Borough of Lodi, 7 N. J. Mis. R. 72,* as controlling on me at this time.

The really important question in the case is whether the resolution ever legally became effective. The minutes of July 2d, 1928, show the alleged resolution there entered in full; and bearing the signature of the mayor, admittedly his, and the attestation of the borough clerk. But, to my mind, this is fully explained away by the proven facts that the original resolution as offered was on a separate piece of paper, as is usual in such cases; that it was handed to the mayor by the borough clerk on the last day of the five days allowed by law, namely, July 7th; and that under date of July 12th the mayor returned it without his signature, and with a somewhat lengthy communication declining to approve it. This veto message from the mayor is spread in full upon the minutes of July 16th. The original paper on which the resolution was written was offered in evidence and shows no signature either of the mayor or of the borough clerk; and the signature of the mayor to the copy of the resolution as entered on the minutes is fully explained by the testimony of the borough clerk, which there is no reason to doubt, and which shows that the copy itself was not written into the minutes at all until sometime in August, a month or so after the meeting, and that sometime after September 4th, there was a sort of roundup of the action of the preceding two months, the mayor sat down and signed everything which seemed to require his signature, including the copy of the resolution as then appear-

ing in the minutes of July 2d and which, by some oversight, he signed, although he had previously vetoed that very resolution, and the minutes plainly show it. I think it needs very little argument to show that a resolution of this kind for the appropriation of money and which goes through very much the same procedure as an ordinance is normally a document complete in itself, written out before its introduction or at the time of its introduction, not in the minutes but alone, and that the paper, like a legislative bill or an ordinance, after favorable action by the legislative body, goes to the executive for his approval or disapproval. This is the plain implication of such cases as *State* v. *Newark,* 25 *N. J. L.* 399 (at *p.* 406); *Boonton* v. *Logan,* 86 *Id.* 486; *Padavano* v. *Fagan,* 66 *Id.* 167; *Outwater* v. *Carlstadt,* 66 *Id.* 510 (at *p.* 514). I do not undertake to say that the resolution may not be written in the minute book in the first instance and be handled in that form for presentation to the mayor and action by him; but I do undertake to say that where, as in this case, the original resolution was written in the normal way on a sheet of paper, transferred to the mayor and, as shown by the minutes, returned by him without his approval, the signature of the mayor on or after the 4th of September to the copy entered in the minute book has no legislative value. It therefore follows that no such resolution as relied on by the relators was ever lawfully enacted in the first instance.

The question remains as to whether the resolution was passed over the mayor's veto. On this point, a very cursory examination of the minutes shows that after its disapproval on July 16th, there was considerable talk back and forth in the council about the matter, that there may have been one or two adjournments, in fact, there was a definite adjournment on August 13th until August 20th, at which latter meeting action on the matter was indefinitely postponed. There were later adjournments, and there was discussion of the question whether a fire truck made by another concern would not be better, and finally it was taken up and at the meeting of December 17th, after one councilman had resigned, the council undertook to pass it over the veto by a vote of three to two. I think this action was futile. The veto was dated July the

12th, was read at the meeting of the 16th, and it was ordered that the letter be spread on the minutes and be given full consideration at a meeting to be held on August 6th. According to the testimony of the borough clerk, the meeting of August 6th was held and no action whatever was taken on the veto. Now, section 27 of the Borough act provides that, in case the mayor returns an ordinance or resolution with his objections in writing, "the council shall at their next meeting cause the objections to be entered at length on their minutes and proceed to reconsider the same, and if two-thirds of the councilmen shall at said meeting, or at any subsequent meeting to which they shall postpone its reconsideration, vote to pass the same over said veto, it shall take effect." In my judgment, the council lost jurisdiction by failing to take some further action by way of adjournment at the meeting of August the 6th.

But if I were doubtful on these points, still a writ of *mandamus* should not be awarded. It appears that there is at least doubt as to the status of this resolution; and it further appears that very recently the borough has undertaken to make a definite contract with a rival concern which calls for the purchase of a fire truck and the expenditure of $13,000 for the same. It is suggested that this contract is invalid; but that question is not before me at this time and cannot be considered here; all that I can consider is the testimony that there is in existence a written paper purporting to be the contract of the borough with a rival concern, and which should, for all I know, be perfectly valid. As was said in *McCormick* v. *New Brunswick,* 89 *N. J. L.* 117, cited by counsel on the argument, *mandamus* will not ordinarily be awarded when such award will create disorder or confusion or injuriously affect the rights of third persons. This case was taken to the Court of Errors and Appeals and remained on the calendar of that court for many years, but was never argued, and counsel for the relator therein has recently died. It stands as authoritative for present purposes and, I may say, has more than once been favorably cited.

I conclude that the rule to show cause should be discharged, but without costs.